## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**ALCIDES ROMAN ROMAN, et al.**
**Plaintiffs**

       **v.**                                   **CIVIL NO. 01-1544 (DRD)**

**CARLOS O. DELGADO ALTIERI, et al.**
**Defendants**

### OPINION AND ORDER

Plaintiffs brought forth a civil action (Docket No. 1) against defendants under 42 U.S.C. § 1983 and Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 P.R. Laws Ann. §§5141 and 5142.  Plaintiffs allege violations of their constitutional rights as guaranteed in both the Federal Constitution and the Constitution of the Commonwealth of Puerto Rico.  Specifically, plaintiffs sustain they were objects of an adverse employment action due to their political affiliation to the New Progressive Party ("NPP").   Plaintiffs are seeking an injunctive relief, punitive damages and compensatory damages.

Pending before the Court are defendants' *Motion to Resubmit Defendants' Motion for Summary Judgment as to "Trust Employees Unlawfully Reinstated" and "Trust Employees with Illegal Career Appointments"* (Docket No. 107); *Motion Supplementing Request for Summary Judgment in light of Recent Case Law from the Court of Appeals for the First Circuit* (Docket No. 157); and *Motion further Supplementing Pending Motions for Summary Judgment in Light of Echevarria. v. Ruiz Hernandez*, 364 F. Supp. 2d 149 (D.P.R. 2005) (Docket No. 167).  Through said motions, defendants sustain that the trust employees' reinstatements and the career appointment positions made by the prior PNP administration after August 30, 1991 were performed in violation

to the Autonomous Municipalities Act and the Merit Principal System.  Moreover, defendants allege that recent expressions by the First Circuit Court of Appeals are sufficient grounds to move the Court to reconsider all the remaining plaintiffs' claims and dismiss the case in its entirety by virtue of burden of proof requiring a plaintiff to comply in order to prove a finding of politically based discriminatory animus. The first two motions were respectively duly opposed by plaintiffs. *See Plaintiffs' Opposition to Defendants' Motion to Resubmit Motion for Summary Judgment* (Docket No. 108) and *Plaintiffs' Response to Defendants' "Motion Supplementing Request for Summary Judgement in light of Recent Case Law from the Court of Appeals for the First Circuit"* (Docket No. 158).

In addition, defendants filed a *Motion to Join* (Docket No. 168) requesting the Court that co-defendants Hon. Mayor Carlos O. Delgado Altieri, José Luis González, Celestino González, Matilde Rodríguez – all in their official capacity – and the Municipality of Isabela be joined to the *Motion further Supplementing Pending Motions for Summary Judgment in Light of <u>Echevarria. v. Ruiz Hernandez</u>*, 364 F. Supp. 2d 149 (D.P.R. 2005) (Docket No. 167).

For the reasons stated herein, the Court hereby **GRANTS IN PART AND DENIES IN PART** *Defendants' Motion to Resubmit Defendants' Motion for Summary Judgment as to "Trust Employees Unlawfully Reinstated" and "Trust Employees with Illegal Career Appointments"* (Docket No. 107).  Defendant's *Motion Supplementing Request for Summary Judgment in light of Recent Case Law from the Court of Appeals for the First Circuit* (Docket No. 157) and *Motion further Supplementing Pending Motions for Summary Judgment in Light of <u>Echevarria. v. Ruiz Hernandez</u>*, 364 F. Supp. 2d 149 (D.P.R. 2005) (Docket No. 167) are hereby **NOTED**. Finally, the Court hereby **GRANTS** defendant's *Motion to Join* (Docket No. 168).

## SUMMARY JUDGMENT STANDARD

The framework of Fed.R.Civ.P. 56 provides that it is appropriate to enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56©.  *See* Celotex Corp v. Catrett, 477 U.S. 317, 324-25, 106 S.Ct. 2548, 2553-54 (1986); Abbadessa v. Moore Business Forms, Inc., 987 F.2d 18, 22 (1st Cir. 1993).  Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," *and* that he is "entitled to judgment as a matter of law."  Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).  When the moving party asserts that the competent evidence clearly demonstrates that it is entitled to judgment and after the moving party has satisfied this burden, the onus shifts to the  resisting party to show that there still exists "a trial worthy issue as to some material fact."  Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir. 1997).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trial worthy issue as to any material fact.  *See* Perez v. Volvo Car Corporation, 247 F.3d 303, 310 (1st Cir. 2001); Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000); Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, at187; McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995) (the Court must look behind the facade of the pleadings alleged in the complaint, in this case the *Third Amended Complaint* (Docket No. 59) and examine the parties proof in order to determine whether a trial is required.).  Furthermore, a fact is "material" if it potentially could affect the suit's outcome.  *See* Id.  An issue concerning such a fact is "genuine"

if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor. *See* <u>Id.</u> The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc</u>., 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000).

This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *See* <u>Reeves</u>, <u>id.</u> Furthermore, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood[.]" <u>Greenburg v. Puerto Rico Mar. Shipping Auth.</u>, 835 F.2d 932, 936 (1st Cir. 1987). "The Court should give credence to the evidence favoring the non-movant as well as the evidence supporting the moving party that is contradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." <u>Id.</u> Issues of motive are usually not appropriate when in summary judgment for these are questions better suited to be resolved by the trier of facts. *See* <u>Pullman-Standard v. Swint</u>, 456 U.S. 273, 288-90, 102 S.Ct. 1781, 1790-91 (1982); <u>Lipsett v. University of P.R.</u>, 864 F.2d 881, 895 (1st Cir. 1988); <u>Dominguez-Cruz v. Suttle Caribe, Inc.</u>, 202 F.3d 424, 433 (1st Cir. 2000); *see also* <u>Ayala Gerena v. Bristol Myers-Squibb Co.</u>, 95 F.3d 86, 95 (1st Cir. 1996); <u>Mulero Rodriguez v. Ponte Inc.</u>, 98 F.3d 670, 677 (1st Cir. 1996); <u>Stoutt v. Banco Popular de P.R.</u>, 158 F.Supp.2d 167, 172 (D.P.R. 2001).

An absence of evidence on a critical issue weighs against the party –be it the movant or the non-movant– who would bear the burden of proof on that issue at trial. *See* <u>Perez v. Volvo Corporation</u>, 247 F. 3d at 310; *see also* <u>Torres Vargas v. Santiago Cummings</u>, 149 F.3d 29, 35-36

(1st Cir. 1998);   Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990).   Accordingly, "speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant on the face of a properly documented summary judgment motion."   Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d at 95.

An absence of evidence on a critical issue weighs against the party –be it the movant or the non-movant– who would bear the burden of proof on that issue at trial. *See* Perez v. Volvo Corporation, 247 F. 3d at 310; *see also* Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35-36 (1st Cir. 1998);   Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990).   Accordingly, "speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant on the face of a properly documented summary judgment motion."   Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996) (*citations omitted*).

At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the non-movant and indulges all reasonable inferences in that party's favor.  Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Company v. Hayes, 116 F.3d 957 at 959-60 (1st Cir. 1997).   In other words, the court must construe the record and all reasonable inferences from it in favor of the non-movant (the party opposing the summary judgment motion). *See* Suarez v. Pueblo Int'l, Inc. 229 F.3d 49, 53 (1st Cir. 2000); Cortes-Irizarry, 111 F. 3d at 187; *see also* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).   Moreover, "[i]f the adverse party does not [file an opposition], summary judgment, **if appropriate**, shall be entered against the adverse party." Fed.R.Civ.P. 56(e) (emphasis added).  The First Circuit Court of Appeals

has made clear that failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of summary judgment against the party; therefore, a District Court is nonetheless "obliged to consider the motion on the merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991); *see also* Lopez v. Corporacion Azucarera de Puerto Rico, 938 f.2d 1510, 1517 (1st Cir. 1991) (holding that before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law). In the case of failure to oppose a motion for summary judgment, the consequence "is that the party may lose the right to file an opposition." Mullen v. St. Paul Fire & Marine Ins. Co., 972 F.2d 446, 451-52 (1st Cir. 1991) (discussing unopposed motion for summary judgment). Notwithstanding, **a party that fails to oppose a motion for summary judgment, does so at its own risk and peril**. *See e.g.* Corrada Betances v. Sea-Land Services, Inc., 248 F.3d 40, 43 (1st Cir. 2001); Herbert v. Wicklund, 744 F.2d 218, 233 (1st Cir. 1994). However, even though that there is no opposition on file to a summary judgement, the Court must entertain the motion on the merits and may not grant the same as a sanction to the party who fails to oppose. *See* De la Vega v. San Juan Star, 377 F. 3d 111(1st Cir. 2004).

### A *PRIMA FACIE* CASE OF DISCRIMINATION UNDER A §1983 CLAIM

A.   Generally:

It is settled law that when a plaintiff institutes a claim of political discrimination, he or she, undoubtedly, bears the burden of producing sufficient evidence, be it through direct or circumstantial means, that he or she engaged in a constitutionally protected conduct and that his or her political affiliation was the **substantial or motivating factor** behind the challenged adverse employment

action.  *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Guzman Ruiz v. Hernandez Colon, 406 F.3 31, 34 (1st Cir. 2005); Gonzalez de Blasini v. Family Department, 377 F.3d 81, 85 (1st Cir. 2004); Cosme Rosado v. Serrano Rodriguez, 360 F.3d 42, 47 (1st Cir. 2004).  Accordingly, said plaintiff is **obligated** to point "to evidence on the record which, if credited, could permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed form a politically based discriminatory animus."  LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996) (*quoting* Rivera Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994)); *see also*, Cruz Baez v. Negron Irizarry, 360 F.Supp.2d 326 (D.P.R. 2005).  Consequently, even when circumstantial evidence may be sufficient to support a finding of political discrimination, plaintiffs must make a **fact specific** showing that a **causal connection** exists between the adverse employment action and their political affiliation.  *See* Aviles Martinez v. Monroig, 963 F.3d 2, 5 (1st Cir. 1992).

However, the First Circuit has established that knowledge of political affiliation cannot be merely established through testimony of having been seen, or, for that matter, met during routine campaign activity participation, having been visited by the now incumbent defendant while said defendant was a candidate to the position he now holds, by having held a trust position in the outgoing administration, by having political propaganda adhered to plaintiff's car and/or house, or through the knowledge of third parties.  *See* Gonzalez Pina v. Rodriguez, 407 F.3d 425, 432 (1st Cir. 2005) (holding that, even if the opposing party mayor was aware of plaintiff's support for a rival mayoral candidate in the primary, that, by itself, is insufficient to establish political *animus*); Gonzalez de Blasini, *supra* at 85-86 (affirming the dismissal of a complaint concluding that, even though plaintiff was alleged to be a well known supporter of the NPP, had held a trust position under

the previous NPP administration, and defendant had expressed interest in giving her position to a PDP member, this fell short of evidence that defendant knew of plaintiff's political affiliation); Vazquez Valentin v. Santiago Diaz, 385 F.3d 23 (1st Cir. 2004) (holding that meetings during routine campaign canvassing do not lead to a reasonable inference that defendant knew of political affiliation at the moment of reviewing personnel files); Cosme Rosado v. Serrano Rodriguez, *supra* at 48 (holding that the statement of PDP major of intent to rid town of NPP activists was, by itself, insufficient to generate genuine issues of material fact); Camilo Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999) (holding that evidence must be presented that defendant was either the primary actor involved in, or a prime mover behind, the underlying violation); Acevedo Diaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993) (holding the fact that plaintiffs were conspicuous targets for discriminatory employment action by defendants because they played prominent roles in publicly and vocally supporting a former mayor was not enough).  Thus, asserting mere inequity and tacking on a self-serving conclusions that defendant was motivated by discriminatory *animus* does not suffice as the *prima facie*-fact specific showing that a plaintiff was a victim of political discrimination.  Id.

Finally, if plaintiffs succeed in making a *prima facie*-fact specific showing of political discrimination, judgment as a matter of law cannot be entered against said plaintiff for defendant is allowed to prove, by preponderance of the evidence, that the adverse employment action would have been made regardless of the employee's political affiliation.  Id.  This particular defense commonly referred to as the *Mt. Healthy* defense requires, thus, that defendant show, by a preponderance of the evidence, that the decision to terminate employment would have been made regardless of the employee's political beliefs.  Defendants must also establish that they would have

taken said corrective action against all employees in similar position to plaintiffs' – or otherwise show that they would have taken the corrective action either way – regardless of political affiliation. *See* <u>Sanchez Lopez v. Fuentes Pujols</u>, 375 F.3d 121, 131 (1st Cir. 2004).  If said evidence is credible and nondiscriminatory, the burden is shifted, once again, to plaintiff where he or she must make a showing that political affiliation "was more likely than not a motivating factor."  <u>Padilla Garcia v. Rodriguez</u>, 212 F.3d 69, 74 (1st. Cir. 2000).  Logically, then, plaintiffs may still prevail if it is found they would not have received the same treatment 'but for' their political affiliation.  *See* <u>Acosta Sepulveda v. Hernandez Purcell</u>, 889 F.2d 9, 13 (1st Cir. 1989).

B.    <u>"Short of Dismissal"</u>:

In "short of dismissal" causes of actions, as is the cause of action brought forth by some of the plaintiffs herein, plaintiffs have to show, through preponderance of the evidence, that the diminution in their duties was motivated by discrimination based on political affiliation; and, by clear and convincing evidence, that the challenged actions resulted in a work environment "unreasonably inferior" to the norm for the position.  *See* <u>Gonzalez Pina v. Rodriguez</u>, 407 F.3d at 431-32; <u>Ortiz Garcia v. Toledo Fernandez</u>, 405 F.3d 21 (1st Cir. 2005); <u>Acosta Orozco v. Rodriguez de Rivera</u>, 132 F.3d 97 (1st Cir. 1997); <u>Agosto v. Agosto de Feliciano</u>, 889 F.2d 1209, 1218-20 (1st Cir. 1989); <u>Agosto v. Aponte Roque</u>, 800 F.Supp. 1033, 1037 (D.P.R. 1992).  Furthermore, in guiding district courts as to the application of the "unreasonably inferior" prong of the *prima facie* analysis, the First Circuit Court has explained that this outcome rests upon whether "the government's actions are sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party."  <u>Agosto de Feliciano</u>, 889 F.2d at 1217.  Again, if this two-pronged requirement is met, then judgment as a matter of law is still

incomplete for defendant would have the right to contest plaintiffs' *prima facie* claim of "short of dismissal" due to political discrimination by demonstrating that the adverse employment action would have been made regardless of the employee's political affiliation.

Albeit, the First Circuit has clearly upheld that an employee who has lost merely the perks of his position; whose job has been substantially diminished, but retains his or her supervisory authority over matters of comparable significance to those taken away; who had been a supervisor and had worked independently and lost said independence, or *vice versa*; and who is merely provided with one or two short-term assignments that are below his rank **do not** meet the unreasonably inferior standard.  On the contrary, he who was left with only a few routine and technical assignments, or no significant assignments at all; whose job functions remain largely the same, but is excluded from policymaking sessions; who retains her job duties, but is criticized harshly and on a nearly daily basis and never provided with guidance on how to improve, and/or transferred to an undesirable office space **do meet** the unreasonably inferior standard.

C.    Trust Positions:

As explained above, in political discrimination cases, plaintiff has to first show that party affiliation was a substantial or motivating factor for the challenged action.  Once this is proven, the burden shifts to the defendants.  They must, then, make a showing that, either a non-discriminatory reason was the true object of the challenged employment action, or that plaintiff held a "political" position for which party affiliation constituted an appropriate qualification for continued employment.  *See* Branti v. Finkel, 445 U.S. 507, 218, 100 S.Ct. 1287, 1294-95, 63 L.Ed.2d 574 (1980); Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); Ortiz Pinero v. Rivera Arroyo, 84 F.3d 7, 12 (1ˢᵗ Cir. 1996).  This is widely known as the *Branti/Elrod* defense which is

designed to ensure that the "representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate."  Elrod, 427 U.S. at 367, 96 S.Ct. at 2687).

Furthermore, "[w]hether a government position is 'political' does not depend upon such loose-fitting labels as *substance of the duties inherent in the position itself*."  Ortiz Pinero, 84 F.3d at 12 (*emphasis in original*).  Accordingly, a position could very well be considered political even when it is neither confidential nor policymaking in character.  On the other hand, party affiliation may not be a relevant consideration for all policymaking or confidential positions. *See* Ortiz Pinero, Id.; Romero Feliciano v. Torres Gaztambide, 836 F.2d 1, 3 (1st Cir. 1987).  Finally, in order for the Court to properly identify "political" positions, a two-pronged test has been established under the *Branti/Elrod* analysis:

> First, we inquire whether the overall functions of the employee's department or agency involve "decision making on issues where there is room for political disagreement on goals or their implementation."  Second, we decide whether the particular responsibilities of the plaintiff's position, within the department or agency, resemble those of a "policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement" for continued tenure.  Among the indicia material to the second element are "'relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders.'"

O'Connor v. Steeves, 994 F.2d 905, 906-07 (1st Cir. 1993) (*quoting* Jimenez Fuentes, 807 F.2d at 241-42, *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987); *see also*, Ortiz Pinero, Id.

## AUTONOMOUS MUNICIPALITIES ACT OF 1991

The Legislative Assembly of Puerto Rico, with the sole intention to implement an integral

reform of the constitution, organization, administration and operation of the municipal government,

approved the Autonomous Municipalities Act of 1991 (AMA).  The AMA, consequently, annulled

the Organic Act of the Municipalities of Puerto Rico, Act No. 146 of June 18, 1980, as well as other

acts that governed the operations of municipalities.  *See* Alcalde Mun. Humacao v. Ramos Cofresi,

140 P.R. Dec. 587 (1996).  As a new reform, the act broadens the autonomy and self-government

of the municipalities providing them with new administrative and fiscal mechanisms in an effort for

them to attend the needs of its individual, municipal citizens.

> AMA's Statement of Public Policy provides that:
>
> [T]he public policy of the Commonwealth of Puerto Rico, [is] to grant the municipalities the highest possible degree of autonomy and provide them with the financial tools, and the power and faculties needed to assume a central and fundamental role in their urban, social and economic development.  This Commonwealth of Puerto Rico Autonomous Municipalities Act created the mechanisms so that the municipalities can have the powers and faculties that are essential for an effective democratic governmental operation; powers and faculties, which before the approval of this Act [this subtitle], rested exclusively in the Central Government.

Act No. 81 of August 30, 1991, sec. 1.002.  It is understood, then, that the AMA provides a

personnel system in an attempt to promote greater efficiency in the offerings of services and the

administration of the governmental municipal resources. Moreover, AMA attempts to enhance the

economical and social well-being of public employees.  21 P.R. Laws Ann. §4551, Alcalde Mun.

Humacao v. Ramos Cofresi, *supra*.

Furthermore, the act creates an employment legal status for municipal employees, such as

confidential and career employees.  Career employees are, thus, deemed to be those individuals who,

**after completing the selection-recruitment process and the probation period**, acquire a

permanent status, which, ultimately, grants them a property right interest in their current

employment position. 21 P.R. Laws Ann. §4554; *see also* <u>González de Blasini</u>, *supra*.  Accordingly,

the selection and recruitment process for a career employee is restricted to several mandatory

requirements to wit:

1.    the municipality must offer the opportunity to compete for career positions to any  qualified person who wishes to participate in the municipality's public functions;
2.    the existence of a Classification and Compensation Plan;
3.    the compliance of the candidates with the general conditions;
4.    compliance of the candidates with the minimum requirements;
5.    public notice of the opportunities of employment;
6.    a register of eligible candidates;
7.    the existence of a Selection Committee;
8.    interviews of all eligible candidates and tests of their skill;
9.    the selection must be made by the Major of a list of five candidates the Committee, made out of three (3) members, considers best qualified based on their capacity and special qualifications to perform the functions of the position.

<u>Id.</u> at §§4555-4565.

The public policy of the Commonwealth of Puerto Rico is to make sure that only the most

competent individuals serve the Government; hence, the ordering of such specific procedures and

the reason for the municipal personnel system to operate under the merit principle. 3 P.R. Laws Ann.

§1311, *see also* <u>Olga L. Torres Ramos v. Policia de Puerto Rico</u>, 143 P.R. Dec. 783 (1997) .

The Merit Principle, in turn, is defined as a determinative and an integral factor used by

government agencies when recruiting career employees.  *See* <u>Garcia Ortiz v. Policia de Puerto Rico</u>,

140 P.R. Dec.  247 (1996). Specifically, the AMA stipulates that the municipal public service shall

be governed by the Merit Principle to ensure that those individuals who serve the Municipal

Government are the fittest. 21 L.P.R.A.§4551; <u>Figueroa- Serrano v. Ramos-Alverio</u>, 221 F.3d. 1,

6 (1st Cir. 2000); <u>Echevarria v. Ruiz Hernandez</u>, 364 F. Supp. 2d. 149 (D.P.R. 2005).  The Merit

Principle requires that the recruitment authority can only take into consideration the merits and the capability of the applicant when selecting, training, promoting, retaining, and treating a career employee without any discrimination because of race, color, birth, age, origin or social condition, or political or religious ideas. 3 P.R. Laws Ann. § 1311, <u>Aida I. Martinez Figueroa v. Oficina del Gobernador,</u> 152 P.R. Dec. 586, 596 (2000). Mayors and officers of all the municipalities of Puerto Rico must, consequently, comply with said requirements of the Merit Principle when selecting and recruiting its employees. Otherwise, the appointment of the career employee would be declared null and void *ab initio* and the appointing-recruitment officer(s) would be exposed to a misdemeanor charge, imprisonment for a period of no more than ninety (90) days, or both. 21 P.R. Laws Ann. §4576. *See* <u>González de Blasini</u>, *supra* at 86; <u>Kauffman v. P.R. Tel. Co.</u>, 841 F 2d. 1169, 1177 (1st Cir. 1988); <u>De Feliciano v. De Jesús</u>, 873 F. 2d 447, 452-455 (1st Cir. 1989). It should be noted, however, that AMA provides an exception, a grandfather clause, allowing municipal employees, of the Municipal Assembly, who, prior to the enactment of AMA, are performing permanent functions corresponding to the career service, to retain their career employee status. 21 P.R. Laws Ann..§ 4575.

On the other hand, the recruitment process of confidential employees (i.e. trust employees) is not as restricted or as regulated as the selection process of a career employee. A confidential employee shall be *freely* selected and removed from office at any time, except in those circumstances where the appointment in office is for a set term. 21 P.R. Laws Ann. §4554. However, in cases where the removal of such trust employee is for grounds that are analogous to the grounds for the removal of a career employee, the procedure to follow **may be** the same procedure used for the removal of a career employee. This would require the filing of charges in writing. <u>Id</u>.

Even though, confidential employees are not subject to a structural definite recruitment process, it is certainly definite that any career employee that occupies a confidential position, or is elected or designated as substitute to hold a public elective office, and returns to his career employee status has the absolute right to be reinstated, and is entitled to all classification and salary benefits in a position that is equal or similar to the last career position the person held.  Id. at §4554.  In fact, Section 1350 of the Puerto Public Service Personnel Act of 1982 reads as follow,

> Whenever a trust employee is separated from his position and prior to rendering services in the trust service he held a career position with a regular status, he will have the absolute right to be reinstated to a position equal or similar to the last one he occupied in the career service.  The responsibility for reinstating the employee will belong to the agency from which he was separated, which must exhaust all remedies to reinstate the employee in any of its programs or in other agencies of the personnel system.

 3 P. R. Laws Ann. §1350, *see also* <u>Huertas Morales v. Agosto Alicea</u>, 278 F. Supp. 2d 164, 171 (2003).

Unlike career employers, confidential employees do not posses a property right.[1]  In other words, confidential employees do not own a right of property over their trust position.  In that sense, it is critical to keep in mind that, a property interest (i.e. a property right) exists by "rules or understandings that stem from an independent source such as state law."  <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 538, 105 S. Ct. 1487, 1491 (1985); *see also* <u>Navas Chabran v. Santiago Nieves,</u> 666 F. Supp. 16, 19 (D.P.R.) (1987).  In Puerto Rico, the local state law that governs property right in relation to public service is the Puerto Rico Public Service Personnel Act of 1975, 3 P.R. Laws Ann. §1311 *et seq*.  The act makes the distinction  between two types of public service

---

[1] A property right is a right to a specific property whether that property is tangible or intangible.  (Black's Law Dictionary, 1348)

employees; those that are career, and those that are confidential (or trust employees). Id. at §1349. Confidential employees, as defined by the act, are "those who intervene or collaborate substantially in the formulation of the public policy, who advise directly or render direct services to the head of the agency". Id. at §1350, Navas Chabran, *supra* at 19.

Under the mentioned Personnel Act, a trust employee is not provided a property right to continued employment.  Therefore, he is not entitled to due process protections prior to discharge. *See* Laureano-Agosto v. Garcia-Caraballo, 731 F. 2d 101, 103 (1st Cir. 1984); Navas Chabran, *supra* at 19.  It should also be noted that to establish a procedural due process claim under 42 U.S.C. §1983, the plaintiff has to prove, first, that he has a property interest, and only then may he or she proceed to prove that defendants deprived him of that property interest without a constitutionally adequate process. *See* Logan v. Zimmerman Brush Co., 455 U.S. 422, 428; 102 S. Ct. 1148, 71 L.Ed. 2d 265 (1982); Soto González v. Rey Hernández, 310 F. Supp. 2d 418, 424 (D.P.R. 2004). Furthermore, the plaintiff has to prove the following elements: first, that he suffered intentional discrimination from the  defendants; second, that the defendants were aware of his political affiliation; and third, that it was because of his political affiliation that defendants committed the due process violation.  *See* Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248; 101 S. Ct. 1089, 67 L.Ed. 2d 207 (1981); Personnel Administrator v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282, 60 L.Ed. 2d 870 (1979).  Under state law, confidential employees in Puerto Rico have no property interest, thus, they do not have a cause of action for political discrimination under the Fourteenth Amendment.  In addition, they do not have a cause of action for political discrimination under the First Amendment for the reasons stated hereafter.

In general terms, a public employee cannot be fired solely because of his political affiliation.

*See* Branti v. Finkel, 445 U.S. 507, 517, 100 S. Ct. 1287, 63 L.Ed. 2d 574 (1980); Elrod v. Burns, 427 U.S. 347, 373; 96 S. Ct. 2673, 49 L.Ed. 2d 547 (1976); Rosenberg v. City of Everett, 328 F. 3d 12, 17-18 (1st Cir. 2003); Flores Camilo v. Alvarez Ramirez, 283 F. Supp. 440, 446 (D.P.R.)(2003); Rovira Rivera, *supra* at 159.  Nonetheless, there is an exception.  If the hiring authority can demonstrate that the requirement of political affiliation is essential for the effective performance of the public office in question, then a dismissal because of political discrimination is permissible.  *See* Jiménez Fuentes v. Torres Gaztambide, 807 F. 2d 236, 240 (1st Cir. 1986) (*en banc*) (*quoting* Branti, 445 U.S. at 518, 100 S. Ct. 1287, 63 L.Ed.2d 574); Flores Camilo, *supra* at 446;  Rovira Rivera, *supra* at 159).  That is to say, the First Amendment rights of a trust employee are not violated if he or she is terminated solely because of his political affiliation from an employment that requires, as an essential element, a specific kind of political affiliation for the effective performance of the public office.[2]   The rationale behind this exception is to provide the elected officials an opportunity to work with *trust* employees that are responsive to the goals of the new administration.  *See* Flynn v. City of Boston, 140 F. 3d 42, 46 (1st Cir. 1998); Flores Camilo, *supra* at 446;  Rovira Rivera, *supra* at 159.

Consequently, Puerto Rico non-career employees do not have a cause of action under the Fifth and/or the Fourteenth Amendments, although they may still posses a cause of action pursuant to the First Amendment regarding political discrimination.  Should the affected employee be a trust employee in a position wherein political affiliation is an essential element for the performance of his job, there is no First Amendment Claim.  *See* Jimenez Fuentes v. Torres Gaztambiede, 807 F.2d 236, 240 (1st Cir. 1986); Rovira Rivera v. Puerto Rico Electrical Power Authority, 364 F.Supp.2d

---

[2] It is a legal question left to the Court to decide whether or not a position is subject to political discharge. *See* Flynn v. City of Boston, 140 F. 3d. 42, 46 (1st Cir. 1998).

154 (D.P.R. 2005); <u>Flores Camilo v. Alvarez Ramirez</u>, 283 F.Supp.2d 440 (1st Cir. 2003).  First

Circuit case law has more than clearly resolved the issue of whether a First Amendment claim by

an employee and/or ex-employee who held a null and void position affords said claimant the

opportunity to argue that the adverse employment action due to said nullity was a pretext for

political discrimination.  To that effect, it held that:

> [l]et us be perfectly clear. [...] We add that, even if the defendants can establish that
> the plaintiff's employment was null and void because she was hired illegally, the
> plaintiff still must be accorded the opportunity to argue that her dismissal on this
> ground was a pretext for political discrimination.  If she can establish that political
> discrimination was a motivating factor in her ouster, the defendants must then
> attempt to prove that they would have made the same decision even in the absence
> of any discriminatory animus.

<u>Rosario Urdaz v. Rivera Hernandez, et als</u>, 350 F.3d 219, 224 (1st Cir. 2003) (*citing* <u>Mt. Healthy City</u>

<u>Sch. Dist. Bd. of Educ. v. Doyle</u>, *supra*; <u>Mullin v. Town of Fairhaven</u>, 284 F.3d 31 (1st Cir. 2002).

## GENERAL PROCEDURAL BACKGROUND

Plaintiffs filed suit against defendants[3] on May 1st, 2001 pursuant to 42 U.S.C. §1983,

alleging violations of their constitutional rights as guaranteed in both the Constitution of the United

States and the Constitution of the Commonwealth of Puerto Rico. (Docket No. 1).  In addition,

plaintiffs claim damages pursuant to Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31

P.R. Laws Ann. §§5141 and 5142.  In essence, plaintiffs sustain that in 2001, when defendant

Popular Democratic Party's (P.D.P.) candidate Delgado Altieri took office as Mayor of the

Municipality of Isabela, they were victims of an adverse employment action executed by the

---

[3] Defendants, in the instant case, are Carlos O. Delgado Altieri, in his personal and official capacity as
Mayor of the Municipality of Isabela; José González Pérez, in his personal and official capacity as Director of
Human Resources for the Municipality of Isabela; Matilde Rodríguez, in his personal and official capacity as
Director of the Municipality of Isabela's Nursing Home; Amilcar González, in his personal and official capacity as
the Municipality of Isabela's Public Works' Director; Celestino González, in his personal and official capacity as
Director of the Municipality of Isabela's Civil Defense and the Municipality of Isabela.  *See*, (Docket No. 1 at p. 3).

Municipality of Isabela and its officers due their political affiliation to the New Progressive Party (N.P.P.).

On July 1, 2003, defendants filed a *Motion for Summary Judgment and Memorandum of Law in Support Thereof*. (Docket No. 78).  Subsequently, on March 31, 2004, the Court issued an *Opinion and Order* (Docket No. 98) in which the Court granted in part and denied in part defendants' Motion for Summary Judgment (Docket 78).  In said *Order*, the Court concluded that a certain number of the plaintiffs failed to establish a prima facie case of political discrimination. Moreover, the court found that plaintiffs did not reach the threshold level required under the First Amendment and Section 1983 as established by the precedent case law.  However, the Court reasoned that plaintiffs, Juan A. Bonilla Millet, Jose Crespo Misla, Nemesio Morales Valentín, Olga Iris Rivera Soto, Elizabeth Rosado Ramos, Luis R. Bonilla Mercado, Wanda Leon Miranda, Omar Muñoz Barreto, Johnny Gonzalez Feliciano, Nancy Aquino Martinez, Alberto Augusto Mercado, Doris Martinez Lopez, Maricela Cruz Ortube, and Mabel Vendrell Reyes successfully met the initial burden of showing a prima facie case of political discrimination.  On April 8, 2004, the Court entered an *Amended Order*, merely adding further case law as to the proper standard for showing an adverse employment action in the First Amendment retaliation context.  (Docket No. 103).

On April 19, 2004 defendants filed a *Motion for Partial Reconsideration of this Honorable Court Issued on March 31, 2004* and *Motion for Reconsideration* (Docket Nos. 109 and 111, respectively).  In their first request, defendants specifically ask the Court to reconsider the denial of the dismissal of the claims of eleven (11) of the Irregular and Law 52 plaintiffs.  The defendants also requested the Court to reconsider the denial of the dismissal of the career employees of the Municipality who allege harassment due to their political affiliation due to them having failed to

allege a cause of action under federal law.  In their second request, defendants advocate to the Court a dismissal of all claims against them under the qualified immunity defense, as well as a dismissal of the constitutional claims of a group of certain plaintiffs, against a certain group of defendants for not having asserted that they incurred in the claimed violations.  Both of these motions were timely opposed by the plaintiffs.  *See* Docket Nos. 110, and 112.  In an *Opinion and Order* (Docket No. 163) issued on May 24, 2005, the Court ruled that defendants failed to establish that the Court's *Opinion and Order* (Docket No. 98) suffered any manifest error of law.  Moreover, the Court reasoned that the defendants simply requested reconsideration based on the same arguments that were previously discussed in the Court's filed order.  The Court emphasized that defendants failed to bring to light a unique situation or the introduction of any new evidence that would call for a reconsideration of the Court's ruling.

Now the Court must attend defendants' *Motion to Resubmit Defendants' Motion for Summary Judgment as to "Trust Employees Unlawfully Reinstated" and "Trust Employees with Illegal Career Appointments"* (Docket No. 107) and *Motion Supplementing Request for Summary Judgment in light of Recent Case Law from the Court of Appeals for the First Circuit* (Docket No. 157) wherein defendants sustain that the trust employees' reinstatements and the career appointment positions by the prior administration after August 30, 1991 were executed in violation to the Autonomous Municipalities Act and the Merit Principal System.  Moreover, defendants allege that recent expressions of the First Circuit are sufficient grounds to move the Court to reconsider all the remaining plaintiffs' claims and dismiss the case in its entirely by virtue of burden of proof that a plaintiff must satisfy in order to prove a finding of politically based discriminatory *animus*. Both motions were duly opposed by plaintiffs. *See Plaintiffs' Opposition to Defendants' Motion to*

*Resubmit Motion for Summary Judgment* (Docket No. 108), and *Plaintiffs' Response to Defendants'*
*"Motion Supplementing Request for Summary Judgement in light of Recent Case Law from the*
*Court of Appeals for the First Circuit"* (Docket No. 158).

### FACTUAL BACKGROUND FOR EACH PLAINTIFFS

### A. TRUST EMPLOYEES ALLEGED TO BE UNLAWFULLY REINSTATED

**Plaintiff Maria. A. Feliciano Rodríguez** began to work as a transitory employee-secretary
for the Human Resources Office of the Municipality of Isabela in 1991. In June of that year, she
was granted the status of career employee holding the same position. Almost two years later, on
January 1993, plaintiff was placed in a trust position as a secretary for the Municipal Assembly,
which she occupied for the next 8 years. On December 28, 2000, plaintiff was reinstated, effective
on January 9, 2001, to the status of career employee, this time as a Executive Officer in the Human
Resources Office. A month after, on February 2001, plaintiff received a letter indicating of her right
to an administrative hearing as to the Municipality's intention of declaring her reinstatement null
and void by virtue that she had been reinstated to a position and salary that did not correspond to the
last career position she had held before becoming a trust employee. Plaintiff chose not to attend
the administrative hearing. On April 30, 2001 plaintiff received a letter from the Mayor expressing
to her that the administrative hearing was held without her presence and that, based on the
determination of facts and conclusion of law of the hearing report issued, he was confirming the
nullity of her reinstatement to a career position as a Executive Officer. As a result, the letter
indicated, she was being reinstated to her previous position as secretary of the Human Resources
Office with the corresponding salary. Plaintiff files suit for political discrimination against the
Municipality of Isabela in light that she was active member in all NPP political activities and

because defendant Carlos Delgado, current Mayor of Isabela, knew of her active political affiliation.

**Plaintiff William Martínez López,** began to work for the Municipality of Isabela as a clerk for the Department of the Civil Defense in 1990.  On March 1991, plaintiff was appointed to the career position of Sub-Director of the same department.   On January 29,1993, plaintiff was appointed to the trust position of Director of the Department of the Civil Defense; not long thereafter, he was appointed to another position as trust position as Director of Public Works.  On December 28, 2000, plaintiff was reinstated to a new career position as General Services Supervisor in the Public Works Department created by the Municipal Assembly Resolution 63, Series 2000-2001.  On April 26, 2001, plaintiff received a letter from the Municipality informing him that his salary was being reduced by virtue that his current salary did not correspond with the salary he had as a career employee before being appointed a trust employee in 1993.

**Plaintiff Adalberto González Medina,** began to work as an Office Clerk I for the Department of Civil Defense of the Municipality of Isabela, receiving a transitory appointment, on August 1, 1991.  This appointment was later changed to the status of a career employee by virtue of the enacting of AMA on August 30, 1991.  On July 1, 1992 plaintiff received a letter from the Human Resources Department indicating him that the position had been reclassified to an ambulance driver.  On August, 31, 1992, his transitory status of ambulance driver changed to regular career status.  On July 1995, plaintiff's regular career position as a Radiation Officer changed to Deputy Director of the Civil Defense.  All of these career appointments (i.e. ambulance driver, Radiation Officer and Deputy Director of the Civil Defense) received by the plaintiff occurring after the enactment of AMA were conducted without following the proper recruitment and selection procedure required by law as previously set forth herein.  On March 16, 1997, plaintiff was

appointed to a trust position as Director of the Civil Defense.  On December 28, 2000 plaintiff was informed to that pursuant to his request he was being reinstated to the new position of Deputy Director of the Civil Defense created by the Municipal Assembly Resolution 63, Series 2000-2001 with a salary of $1,516.00.  On May 1, 2001, defendants reinstated plaintiff in the career position of Office Clerk I and his salary was readjusted to $781.08, which was the salary corresponding to an Office Clerk I in 2001.

**Plaintiff Mariano Crispín Escalera** became a career employee on August 30, 1991, when AMA came into effect, by virtue that he was performing duties of a career employee as an auto body repairman in the Public Works Department.  On January 16, 1993, plaintiff was appointed to a trust position as the Sergeant of Arms of the Municipal Assembly.  On January 9, 2001 plaintiff was reinstated to the career position, created by the Municipal Assembly Resolution 63, of Office Clerk I in the Public Works Department.  After an evaluation by the new administration, plaintiff's reinstatement was deemed properly executed except for the salary which did not correspond with the one he had in his career position as auto body repairman before being appointed to the trust position in 1993. Currently, the new administrations has deprived plaintiff of duties at the Public Works Department.

**Plaintiff Raúl Juarbe Ponce** was given the status of career employee as Ambulance Drivers's Supervisor on August 30, 1991.  On July 1994, plaintiff was appointed to the career position of Executive Officer.  On January 19, 1999, plaintiff was appointed to the trust position of Director of the Nursing Home.  On December 28, 2000, plaintiff was reinstated to the career position of Executive Officer in the Nursing Home, a position newly created by the Municipal Assembly Resolution 63, with the same salary he had as a trust employee.  After an evaluation, the new

administration reinstated plaintiff to the career position of Ambulance Driver Supervisor by virtue that the second career appointment failed to comply with proper recruitment and selection procedure as set forth by the law to acquire a career status.

## B. TRUST EMPLOYEES ALLEGED TO HAVE ILLEGAL CAREER APPOINTMENTS

**Plaintiff Luz E. Corchado Corchado** became a career employee as an Office Clerk I in the Personnel Office on September 1, 1992.  On January 11, 1993, plaintiff was appointed to a trust position as a Secretary of the Municipal Assembly's Commissions.  On January 2001, plaintiff's reinstatement became effective from her trust position in the Municipal Assembly with a salary of $1,170.00 to a career position as Secretary in the Finance Department created by the Municipal Assembly Resolution 63.  A month later, on February 2001, plaintiff went on Maternity Leave.  On that same month, February 27, 2001, plaintiff received a termination of employment letter.  The new administration concluded that plaintiff's employment should be terminated by virtue that she never acquired regular career employee status based on that the selection and recruitment process required under law to achieve career status was never properly followed.

**Plaintiff Edna Maldonado Miranda,** transitory status position as Switchboard Receptionist in the Personnel Office was changed to regular status career position, on July 1, 1995.  On February 3, 1997, plaintiff was appointed to a trust position as Director of Federal Programs.  On January 1, 2001, plaintiff's appointment to the career position of Executive Officer in the Human Resources Office became effective.  This position was created a Municipal Assembly Resolution.  After an evaluation, the new administration concluded that plaintiff's employment should be terminated by virtue that she never acquired regular career employee status based on that the selection and recruitment process required under law to achieve career status was never properly followed.

**Plaintiff Agustín Hernández Tavarez** started to work, under contract, as an Accountant for the Nursing Home on March 1, 1989.  That same year, plaintiff was appointed to the trust position of Interim Director of Finance Department; consequently, when AMA came into effect on August 31, 1991 plaintiff did not acquire a career employee status, but a trust employee status.  On December 1, 1997, he was reclassified to the career position of Interagency Coordinator.  A year later, he was reclassified to a career position of Assistant Administrator, a new position created by the Municipal Assembly.  On July 1999, plaintiff was placed in the trust position of Municipal Secretary, which he served for a little more than a year.  On December 2000, plaintiff was informed of his reinstatement to a new career position of Administrative Officer III in the Municipal Public Works Department created by the municipal Assembly Resolution No. 63.  On April 2001, plaintiff received a letter indicating him of his termination of employment effective April 30, 2001.  The justification provided by the new municipal administration was that plaintiff never acquired a career employee status in light that the proper recruitment and selection procedures required under the law were not followed.

**Plaintiff Rosa H. Rodríguez Juarbe** began to work for the Municipal Assembly of Isabela as a trust employee part time Typist Clerk, on 1994**.**  Two years later, plaintiff, now working as a full time employee typist clerk for the Municipal Assembly, acquired the status of career employee.  On 1997, plaintiff was returned to her previous trust position as a Typist Clerk for the Municipal Assembly.  After three years in that position, plaintiff was appointed in January 9, 2001 to a new career position as Secretary in the Finance Department, created by the Municipal Assembly through a resolution. On April 2001, plaintiff received a letter notifying of her termination of employment, the rationale was that plaintiff never acquired the status of career employee since the proper

mechanisms of recruitment and selection required under the law were not properly followed.

**Plaintiff Wilfredo Román Vélez** started working as a trust employee personal driver for the Municipality of Isabela, on February 1989.  On October 1, 1990, plaintiff was changed from a trust to a career employee as an Executive Officer I in the Human Resources Office.  Interesting enough, plaintiff's personnel file there is an evaluation, signed by the Mayor, for the period from October 1990 to October1991, where Wilfredo Roman's position is identified as an Executive Officer working as the Mayor's Assistant.  This position of Executive Officer I was reclassified to Interagency Coordinator.  After an evaluation by the new municipal administration in 2001, plaintiff received a formal written notice indicating that his appointment as a career employee was declared null and void as the proper procedures to acquire a career position was not followed.  Therefore, he was being terminated from his employment at the Municipality effective on April 30, 2001.

**Plaintiff Sonia M. Soltero AKA Sonia Martínez** started in the Municipality of Isabela in a trust position as the Mayor's Secretary, on July 1, 1994.  On June 28, 1995, plaintiff was notified that her trust position as the Mayor's Secretary had been reclassified to Executive Officer, effective July 1, 1995. On or around November 2000, plaintiff was executing as the Mayor's Aide and supervising the Public relations Office.  She continued to hold this position until 2001, when the new elected Mayor replaced plaintiff with a new Director of the Public Relations Office, José Enrique Méndez**.**  Around this time, plaintiff received a termination of employment letter with an effective date of April 30, 2001.  the new administration concluded that plaintiff's employment should be terminated by virtue that she never acquired regular career employee status based on that the selection and recruitment process required under law to achieve career status was never properly followed.

**Plaintiff Ángel González Rivera** was given a transitory position, in 1994, as a Truck Driver for the Sanitation Division of the Public Works Department of the Municipality of Isabela.  Two years later, on July 1, 1996, his status as transitory employee changed to a regular career employee as Truck Driver.  On February 28, 1997, plaintiff was appointed to be in charge of supervising the Environmental Control Program and Solid Wastes Program.  On October 19, 1998, plaintiff's position was reclassified to Sanitation Supervisor and his salary was raised.  On March 30, 2000, when the Sanitation Department separated from the Public Works Department, Mayor Carmelo Pérez Rivera appointment plaintiff as the Director of the Department of Environmental Control to administrate that area.  On April 30, 2001, plaintiff was dismissed from his employment as Director of the Department of Environmental Control, even though by this time the duties had been returned to the Public Works Director, Amílcar González.  The new administration concluded that plaintiff's employment should be terminated by virtue that she never acquired regular career employee status based on that the selection and recruitment process required under law to achieve career status was never properly followed.

**Plaintiff Luis Pimentel Avila** began working in the Municipality on September 15, 1997, as the Supervisor of the Recycling Program of Isabela.  He was appointed a regular career employee as Executive Officer, on June 1999.  He was then appointed to be in charge of the Environmental Control Office, on September 3, 1999.  On January 21, 2000 plaintiff was appointed to be the Municipal Coliseum Administrator with the Mayor as his immediate supervisor.  After the change of municipal administration in 2001, plaintiff received a letter from the Mayor indicating him of a transfer to the Public Works Department and awaited further instructions.  Subsequently, plaintiff received a letter of termination of employment that was effective as of April 30, 2001 approximately

one and one-half  to two months after his transfer.  the new administration concluded that plaintiff's employment should be terminated by virtue that she never acquired regular career employee status based on that the selection and recruitment process required under law to achieve career status was never properly followed.

## LEGAL ANALYSIS

In the present case, defendants seek summary judgment asserting that plaintiffs were trust employees unlawfully reinstated and trust employees illegally appointed to a career position.  In essence, the question at hand is if the herein employees – who were all classified as career employees at the time of termination or re-classification or re-adjustment of salaries – possess a cause of action for illegal termination and/or short of dismissal pursuant to the First Amendment because of their individual political affiliations. The Court, for purposes of clarity and order, shall dispose of its discussion first addressing the group of plaintiffs alleged to be trust employees unlawfully reinstated.  It shall then move to address the second group of plaintiffs alleged to be trust employees illegally appointed to a career position.

### A. TRUST EMPLOYEES ALLEGED TO BE
### UNLAWFULLY REINSTATED

The Autonomous Municipalities Act of 1991 (AMA), specifically stipulates that a municipal employee acquires a permanent career status which, consequently, grants him or her a property right interest over the career position **only after that individual has successfully completed the nine step selection and recruitment process**.  21 P.R. Laws Ann. §4554; González de Blasini, *supra.* If a municipal employee is appointed as a career employee without first going through the mandatory selection and recruitment process set by AMA,  that appointment must be declared null and void *ab initio*. 21 P.R. Laws Ann. §4576; González de Blasini, *supra*.  The Act, and its

interpretative case law, has been  consistently clear on that matter, and, up to this date, no exception

has been made when declaring valid such an appointment under the law, except when an employee

may prove that the action taken was not neutrally applied and, hence, discriminatory *animus* exists.

See, 21 P.R. Laws Ann. §4554; González de Blasini, *supra,* Kauffman, *supra* at 1177, De Feliciano,

*supra* at 452-455.

Nevertheless, if a career employee occupies a trust position, he or she has the right to be

properly reinstated, entitled to all classification and salary benefits, in a position that is **equal or**

**similar to the last career position the person held**. 21 P.R. Laws Ann. §4554.  As to the case at

bar, there is ample evidence that proves that plaintiffs **Adalberto Gónzález Medina**, **Raul Juarbe**

**Ponce**, and **Maria A. Feliciano Rodríguez** were properly reinstated by the defendants.  Plaintiffs

**Adalberto González Medina and Raul Juarbe Ponce's** career appointments after the enactment

of AMA were not lawfully conducted by the previous NPP administration.  Under the previous NPP

administration Plaintiffs did not follow all the mandatory requirements to obtain the career positions.

In fact, in their respective depositions they admit that all of the career appointment executed by the

previous NPP administration after the AMA was enacted were performed without any of the

requirements stated by law being fulfilled.  *See*, (Docket No. 107 at 7, ln 8 and at 9, ln 17).

However, plaintiffs avail themselves to sustain their appointments as correct in the fact that

co-defendant Delgado appoints his municipal employees to career positions in the same fashion.

The Court understands that Plaintiffs' averment that co-defendant Delgado appoints municipal

employees in career positions in the same fashion that plaintiffs herein were appointed to by the

previous NPP administration is of no merit as to creating a cause of action under due process since

their appointments are illegal irrespective of the position followed under Mayor Delgado's

appointments.  In Echevarría, *supra*, the Court concluded that such a defense does not warrant justification or restrains the defendants from acting pursuant to the law which, in the case at bar, necessarily means reinstating plaintiffs to the valid position he or she held before being appointed as trust employee.  As for plaintiff   **Maria A. Feliciano Rodríguez**, she was also properly reinstated by the defendants.  She was improperly reinstated by the previous NPP administration provided that her reinstatement did not correspond, either in classification or in salary, with the career position she held before becoming a trust employee. *See* (Docket No. 107 at 3).

In light of the facts stated above, it is clear that these plaintiffs, even if establishing a prima facie case under §1983, have not placed the Court in proper position to determine if defendants have adduced said reasons for the adverse employment actions "but for" their political affiliation (i.e. as a mere pretext).  Accordingly, provided that the herein plaintiffs did not comply with the statutorily mandated step process before acquiring their career positions, thus, they are not afforded a cause of action pursuant  to Fifth or Fourteenth Amendment rights; however, they, in vindicating their First Amendment Right, may bring forth evidence of pretext.  Consequently,  the Court hereby **GRANTS IN PART** *Defendants' Motion to Resubmit Defendants' Motion for Summary Judgment as to "Trust Employees Unlawfully Reinstated" and "Trust Employees with Illegal Career Appointments"* (Docket No. 107) against **Adalberto Gónzález Medina**, **Raul Juarbe Ponce**, and **Maria A. Feliciano Rodriguez**, and **DISMISSES WITH PREJUDICE** all of their **FIFTH AND FOURTEENTH AMENDMENT** claims against defendants, and **DENIES** summary judgment as to their First Amendment claims because the record is clearly incomplete.[4]

Furthermore, as for plaintiffs **William Martínez López,** and **Mariano Crispín Escalera**,

---

[4]  Neither plaintiffs nor defendants properly addressed the pretext issue.  Hence, the allegations of the complaint prevail.

the Court finds that there are genuine issues as to several material facts.  After reviewing the entire record, the Courts finds that there are several facts that need to be further developed in order for the Court to make a proper and lawful determination by virtue that both employees were reinstated to *newly created* career positions.  Their respective salaries were reduced  to reflect their previous career appointments designated salaries.  Notwithstanding, the Court finds an insurmountable issue of material fact as to which salary is the correct salary (i.e. if the one corresponding to their previous career appointment positions or the one corresponding to the *newly created* career appointment to which they have been reinstated).  Consequently, *Defendants' Motion to Resubmit Defendants' Motion for Summary Judgment as to "Trust Employees Unlawfully Reinstated" and "Trust Employees with Illegal Career Appointments"* (Docket No. 107) is hereby **DENIED** in its entirety as to plaintiffs **William Martínez López, and Mariano Crispín Escalera**.

## B. TRUST EMPLOYEES ALLEGED TO HAVE
## ILLEGAL CAREER APPOINTMENTS

In order to establish a procedural due process claim under 42 U.S.C. §1983, plaintiffs have to first prove that they have a property interest over the career position.  Once this has been established, they may proceed to prove that defendants deprived them of that property interest without due process.  *See* Logan, *supra* at 428.  Therefore, it is *sine qua non* that a municipal employee in Puerto Rico must first prove that he has a valid career appointment which fully complies with all the requirements established in the AMA.  *See* 21 P.R. Laws Ann. §4554; *see also* Gonzalez de Blasini, *supra*.  In the case at bar, plaintiffs **Luz E. Corchado Corchardo,**[5] **Edna**

---

[5] *See*, Docket No. 107 at 11, ln 14:  Luz Corchado admitted that she was first appointed to a career position at the Municipality of Isabela on July 1, 1992; there was no letter of convocation; she was only interviewed by the Human Resources Director, there was no exam, that she does not know if there was a Register of Eligibles, or if she competed for the position.  (UF 603)  Moreover, Luz Corchado admitted that she does not have the documents required to obtain career status, such as a convocation letter, a job application, a Register of Eligible, or an order to proceed to the Selection's Committee.  Luz Corchado admitted that she has not been submitted to any written

**Maldonado Miranda,[6] Agustín Hernández Tavarez,[7] Rosa H. Rodríguez Juarbe,[8] Sonia M. Vigo a/k/a Sonia Martínez,[9] Ángel González Rivera,[10] and Luis Pimentel Avila,[11]** have failed to prove that they are in fact career employees.  None of these plaintiffs have proffered evidence in order to prove to this Court that they indeed underwent the nine step selection and recruitment

---

evaluation or exam to be recruited, nor did she ever see a convocation letter published.  (Uncontested Fact 604)

[6] *See,* Docket No. 107 at 12, ln 8:  Edna Maldonado admitted in her deposition that she never applied for the regular status career position to which she was appointed to on July 1, 1995.  Somebody from the Human Resources Office called her and requested from her some documents, which she supplied.  She cannot recall having talked to the Mayor to get this career appointment and she is not sure if she had an interview with the Human Resources Director, either. (UF 525)  There is no record of an interview with the selection committee as required by law.

[7] *See,* Docket No. 107 at 13, ln 23, at 14 ln.4:  Agustín Hernández admitted in his deposition as to his career position, that he only made a phone call to the Human Resources Director and asked her if there was a career position available for him and she told him, soon, the interagency coordinator position would be vacant. (UF 559).  He also admitted that he never filed an application, he never saw a convocation letter published and he did not take a test; he never knew if there was a register of eligible or a selection committee.  There is no record of him being interviewed by the selection committee as required by law.  The only matter he complied with to achieve his career position was being interviewed by the Human Resources Director which falls short of the mark to acquire a career position.  (UF 560)

[8] *See,* Docket No. 107 at 15 ln 18, 25:  Rosa Rodríguez admitted that when she was first appointed to a career position a the Municipality of Isabela on July 1, 1996 there was no letter of convocation; that she was only interviewed by the Human Resources Director; that she did not take any exam, that she does not know if there was a register of eligible, or if she competed for the position.  (UF 625)  In December 2000, Rosa Rodríguez was appointed to a new career position as Secretary in the Finance Department, effective on January 9, 2001, once more, without convocation letter or competing with other candidates or being evaluated by a selection committee.

[9] *See,* Docket No. 107 at 19, ln 10:  The only matter Sonia Soltero complied with to achieve this career appointment was to hand in the certificates that the employer requested from her at the Human Resources office and signed documents before a notary public.  (UF 831)  Sonia Soltero admitted in her deposition that she does not know if or when she was appointed to the career position in 1995, if they had a Register of Eligibles or if there was a convocation letter published.  Sonia Soltero knows that she did not meet with a selection committee because in the Municipality nobody met with a selection committee before being appointed to a career position. (UF 832)

[10] *See,* Docket No. 107 at 21, ln 5:  Ángel González admitted that he did not apply for the career position and did not have an interview.  He claims that to achieve the career position he heard that a career employee had retired, and he spoke with the Public Works Director and to the Human Resources Director and he was granted the position.  There is no record of competition, publication, or evaluation by a selection committee as required by law.

[11] *See,* Docket No. 107 at 22 ln 12-13:  Luis Pimentel's recollection is that he went to the Human Resources Office, filled some papers and handed in some documents, but he does not know how he became a regular employee.  Luis Pimentel cannot recall if he went through a recruiting process to become a regular employee, but he admitted that the only recruiting process in which he participated in was the first one in 1997, when he was reinstated after a service contract.  This procedure falls short of the mark for him to acquire a career position.

process established by AMA.  Therefore, after completing their respective terms as trust employees, this group of plaintiffs is not entitled to reinstatement since their career appointments are invalid for they do not comply with the law.  In light of this scenario, plaintiffs cannot sustain a Fifth and/or Fourteenth Amendment cause of action under §1983.  More specifically, plaintiffs were never career employees, but trust employees, and as such, and as amply discussed above, the courts have established that they do not have a property or due process right cause of action under § 1983. As has already been mentioned, trust employees are not entitled to a property right; as a result, they do not posses a cause of action under § 1983 for violation of the Fourteenth Amendment.

Notwithstanding, as explained above, these employees may have a First Amendment right if they prove that their respective political affiliations are not an essential factor for the effective performance of the municipal public **trust** office.  *See* Jimenez Fuentes, *supra* at 240. Notwithstanding, neither of the parties have properly placed this Court in sufficient position to consider *brevis* disposition as to this issue.  Consequently, the Court hereby **GRANTS IN PART** defendants' *Motion to Resubmit Defendants' Motion for Summary Judgment as to "Trust Employees Unlawfully Reinstated" and "Trust Employees with Illegal Career Appointments"* (Docket No. 107) only as to the Fifth and Fourteenth Amendment rights causes of action for the following plaintiffs, **Luz E. Corchado Corchardo, Edna Maldonado Miranda, Agustín Hernández Tavarez, Rosa H. Rodríguez Juarbe, Sonia M Vigo AKA Sonia Martínez, Ángel González Rivera, and Luis Pimentel Avila**; and **DENIES** the request as to these plaintiffs' First Amendment cause of action provided that there is insufficiency of evidence in the record so as to determine if these plaintiffs, by virtue of the works performed, were, in fact, trust positions performing duties wherein political affiliation was a necessary qualification.  The same reasoning applies to plaintiff **Wilfredo Roman**

**Velez**, thus, *brevis* disposition against him is **GRANTED** as to Fifth and Fourteenth Amendment causes of action, but **DENIED** as to First Amendment causes of action.

## CONCLUSION

For the reasons stated above the Court hereby **GRANTS IN PART** defendants' *Motion to Resubmit Defendants' Motion for Summary Judgment as to "Trust Employees Unlawfully Reinstated" and "Trust Employees with Illegal Career Appointments"* (Docket No. 107) as to all plaintiffs' **FIFTH AND FOURTEENTH AMENDMENT** causes of action and **DENIES** as to all plaintiffs' **FIRST AMENDMENT** causes of action.

**IT IS SO ORDERED.**

**In San Juan, Puerto Rico this 30th day of September 2005.**

S/Daniel R. Dominguez
**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**